# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| TERRY L. BAILEY,<br><br>    Petitioner,<br><br>vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>    Respondent. | Case No.: CV- 09-391-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Now pending before the Court is Terry L. Bailey's Petition for Review (Docket No. 1), seeking review of the Social Security Administration's final decision to deny his claim for disability insurance benefits and supplemental security income payments. The action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. ADMINISTRATIVE PROCEEDINGS

On October 19, 2006, Terry L. Bailey ("Petitioner") applied for Disability Insurance Benefits and Supplemental Security Income. *See* Pet.'s Brief in Supp. of Pet. for Review, p. 1 (Docket No. 15). Petitioner's claim was initially denied on December 1, 2006 and, again, on reconsideration on June 7, 2007. *See id.* On October 29, 2007, Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). *See id.* On February 5, 2009, ALJ

**MEMORANDUM DECISION AND ORDER - 1**

Donald R. Jensen held a hearing in Idaho Falls, Idaho, at which time Petitioner, represented by attorney Jay Barnes, appeared and testified. (AR 13). A vocational expert, Connie Hill, also appeared and testified during the same February 5, 2009 hearing. (AR 105-109).

On March 13, 2009, the ALJ issued a decision, denying Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act. (AR 13-21). Petitioner timely requested review from the Appeals Council on March 31, 2009. (AR 4). On June 18, 2009, the Appeals Council denied Petitioner's request for review (AR 1-3), making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted his administrative remedies, Petitioner timely files the instant action, arguing that the decisions of the ALJ and Appeals Council are not supported by substantial evidence, are incorrect, and are contrary to the law and regulations of the Social Security Act. *See* Pet. for Review, pp. 3-4 (Docket No. 1). Specifically, Petitioner asserts that the ALJ (1) failed to properly evaluate Petitioner's credibility; (2) failed to properly evaluate the opinions of Petitioner's treating physician; and (3) improperly rejected the lay testimony from Petitioner's mother, Carolyn Bailey. *See* Pet.'s Brief in Supp. of Pet. for Review, p. 2 (Docket No. 15). Petitioner requests that the Court reverse the ALJ's decision and order the immediate payment of benefits or, alternatively, remand the case for further proceedings before a different ALJ. *See id.*; *see also* Pet. For Review, p. 4 (Docket No. 1).

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

**MEMORANDUM DECISION AND ORDER - 2**

Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). That is, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance of evidence, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's

**MEMORANDUM DECISION AND ORDER - 3**

construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. DISCUSSION

**A.     Sequential Processes**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe his physical/mental impairments are and regardless of his age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner has not engaged in substantial gainful activity since September 10, 2005, the alleged onset date. (AR 15).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner had the following severe impairment - degenerative disc disease of the lumbar spine. (AR 15).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *Id*. Here, the ALJ concluded that Petitioner does not have an impairment (or combination of impairments) that meets or medically equals a listed impairment (AR 16).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant

**MEMORANDUM DECISION AND ORDER - 5**

work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.  20 C.F.R. §§ 404.1545, 416.945.  Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  Here, the ALJ determined that Petitioner has the residual functional capacity to perform sedentary work with the following limitations: (1) Petitioner can sit for 20 minutes at a time for a total of six hours in an eight-hour workday; (2) Petitioner can stand for 15 minutes at a time for a total of two hours in an eight-hour day; and (3) Petitioner must be permitted to sit or stand at will.  (AR 17-20).  In doing so, the ALJ further found that Petitioner is capable of performing past relevant work as a user support analyst because "[t]his work does not require the performance of work-related activities precluded by his residual functional capacity."  (AR 20).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his/her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  If the claimant is able to do other work, he is not disabled; if the claimant is not able to do other work and meets the duration requirement, he is disabled.  Here,

as discussed above, the ALJ determined that Petitioner could perform past relevant work as a user support analyst. (AR 20).

**B.     Analysis**

Petitioner challenges the ALJ's denial of disability benefits in three separate respects. First, Petitioner argues that the ALJ did not provide clear and convincing evidence for rejecting his own testimony. *See* Pet.'s Brief in Supp. of Pet. for Review, p. 2 (Docket No. 15). Second, Petitioner argues that the ALJ's residual functional capacity assessment failed to accurately incorporate Petitioner's treating physician's opinions. *See id*. Third, Petitioner argues that the ALJ erred in rejecting the testimony of Petitioner's mother, Carolyn Bailey.

1.     Petitioner's Credibility

Petitioner takes issue with the ALJ's challenge to his credibility, stating in no uncertain terms that "[t]he ALJ erred by failing to properly evaluate the credibility of [Petitioner's] testimony. *See id.* at p. 6. The ALJ is in the best position to make such credibility determinations and, for this reason, the ALJ's credibility determinations are entitled to great weight. *See Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990). In evaluating a claimant's credibility, the ALJ may consider a claimant's reputation, inconsistencies either in testimony or between testimony and conduct, daily activities, past work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *See Light v. Social Security Admin.*, 119 F.3d 789, 791 (9th Cir. 1997). In short, "[c]redibility decisions are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). At the same time, it should be noted that, to reject a claimant's testimony, the ALJ must

make specific findings stating clear and convincing reasons for doing so. *See Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

During the administrative hearing, Petitioner testified that he experiences "constant irritating pain" between his shoulder blades, sometimes radiating to his buttocks, legs, and feet. (AR 89-90). According to Petitioner, the pain is such that, around the time of his September 10, 2005 onset date, he had difficulty even getting out of bed in the morning. (AR 79) ("I quit [my job]. I could no longer – days at a time I would not be able to get up out of bed and weeks at a time actually."). Contrasted against other evidence in the record, however, the ALJ challenged Petitioner's credibility on the extent of his symptoms.

The ALJ commented on the receptiveness of Petitioner's condition to medication, remarking that Petitioner "does not take prescription medication, but his past medical history shows that i[t] has been effective in controlling[,] if not entirely eliminating[,] his pain." (AR 18). In response, Petitioner does not dispute the ability for medication to alleviate his alleged symptoms; instead, Petitioner points to his apparent inability to afford such medication, as well as an interest in not becoming addicted to prescription drugs. *See* Pet.'s Brief in Supp. of Pet. for Review, pp. 7-8 (Docket No. 15). Here, it is perfectly within the ALJ's discretion to consider whether Petitioner's subjective complaints can be treated through medication. *See, e.g.*, 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv) ("Factors relevant to your symptoms, such as pain, which we will consider include [t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms."). However, where a claimant offers a "good reason" for not following prescribed treatment, that claimant's failure to take prescribed medication does not necessarily operate as a *de facto* indication that he is not

disabled.  *See, e.g.*, 20 C.F.R. §§ 404.1530(b), 416.930(b); *see also Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) ("Where a claimant provides evidence of a good reason for not taking medication for her symptoms, her symptom testimony cannot be rejected for not doing so.  Thus, the fact that [the claimant] was not taking medication is not a clear and convincing reason for discrediting her symptom testimony." (internal citation omitted))).  While, to some extent, the Court questions the legitimacy of Petitioner's addiction fears and/or inability to purchase certain medication,[1] they nonetheless justify Petitioner's use of more conservative, over-the-counter approaches.  At the very least, then, Petitioner's failure to take prescription medication, when considered in isolation, cannot rise to the level of a clear and convincing reason to question Petitioner's credibility.  But the ALJ went on to discuss additional reasons.

For example, the ALJ correctly pointed out that "there is very little objective evidence during the period of alleged disability."  (AR 18).  While Petitioner again argues that he cannot afford medical care (*see* Pet.'s Brief in Supp. of Pet. fore Review, pp. 8-9 (Docket No. 15)), the record neither substantiates this (*see supra* at p. 9, n. 1), nor does Petitioner's testimony reveal a genuine interest in pursuing subsidized treatment:

> Q: And what is your current source of income or support?  How are you being supported?
>
> A: My mother.
>
> Q: She supports you entirely?

---

[1] As Respondent points out, other than Petitioner's subjective comments concerning his finances, there is no evidence supporting such a claim.  *See* Resp't Mem., p. 5 (Docket No. 17). Petitioner's own briefing does little to address these concerns.  *See, e.g.*, Pet.'s Brief in Supp. of Pet. for Review, p. 8 (Docket No. 15) ("The ALJ cannot reject Mr. Bailey's symptom testimony because he is not taking medication that he was addicted to and *likely* cannot afford." (emphasis added)).

**MEMORANDUM DECISION AND ORDER - 9**

> A: Yes.
>
> Q: Do you get any government assistance or benefits, food stamps, anything?
>
> A: No. I did at one time, not currently.
>
> Q: Do you have health insurance coverage?
>
> A: No.
>
> Q: Are you getting care at a low cost or free clinic in the area?
>
> A: No.
>
> Q: There is one here in town that does provide that for.
>
> A: I went there and they demanded payment and insurance information before I would have been seen.
>
> Q: Um-hum. Well, it's only a very minimal copay.
>
> A: I have no money.
>
> Q: Well, I understand that. But people who have insurance still pay that same copay or a similar copay. But you haven't gone to any clinic? You're not getting free care at any clinic or low cost care?
>
> A: No one will see me.

(AR 76-77). Simply put, allegations of pain must be substantiated when determining whether a claimant is disabled under the Social Security Act. This is admittedly a difficult task; however, absent such evidence in the record, a claimant's credibility is not without question. While the Court does not doubt that Petitioner suffers from degenerative disc disease (as also recognized by the ALJ (*see supra* at p. 5)), it is difficult to blindly accept Petitioner's argument that he has been disabled since September 10, 2005 when there is little to no medical support for such a finding. In short, Petitioner's historical failure to seek treatment for his alleged pain, or even consistently report any such complaints since September 10, 2005, necessarily compromises any

**MEMORANDUM DECISION AND ORDER - 10**

claim that he is disabled by virtue of his alleged pain. *See, e.g.*, *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("That [claimant's] pain was 'not severe enough to motivate [her] to seek [these forms of] treatment,' even if she sought some treatment, is powerful evidence regarding the extent to which she was in pain." (internal citation omitted)). The ALJ properly considered this reality in challenging Petitioner's credibility.

The ALJ also pointed out that, after the alleged onset date, Petitioner broke his clavicle while "4-wheeling." (AR 18 (citing AR 23 & 217)). According to the ALJ, "[i]f Mr. Bailey's back pain were as disabling as he has alleged, it is unlikely that he would be able to tolerate engaging in such a physically demanding activity." *See id*. Moreover, it is interesting to note that, while being treated for his clavicle fracture, there is no reference to any disabling back pain. *See id*. ("If he were indeed disabled by his back pain, it is unlikely that he would report no pain and that there would be none on examination."). Petitioner's arguments fail to address these points.[2]

Finally, the ALJ referenced Petitioner's daily activities. (AR 18) ("Mr. Bailey enjoys a wide range of activities of daily living. . . . . It is unlikely that he would be able to perform all these activities on a regular basis if he were indeed as disabled as he has alleged."). If a claimant engages in numerous daily activities involving skills that could be transferred to the workplace,

---

[2] While not referenced within the ALJ's decision, Petitioner was also involved in a car accident nearly one year after the alleged onset date. (AR 27 & 219). The accident itself is not remarkable; however, Petitioner was "actually out of the vehicle trying to push the vehicle out of the ditch when law enforcement and Emergency Medical Services arrived." *See id*. Such activity contrasts with Petitioner's testimony that bending and twisting "drops [him] right to [his] knees." (AR 91). Separately, Petitioner again failed to report any back problems at that time. (AR 27 & 219) ("He denies any complaints at this time, but does not give much history. He just continues to yell drunk insults at us. . . . . He denies chest pain, denies abdominal pain, denies neck or back pain.").

**MEMORANDUM DECISION AND ORDER - 11**

the ALJ may question that claimant's allegations. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); *but see Hernandez-Devereaux v. Astrue*, 614 F. Supp. 2d 1125, 1149 (D. Or. 2009) ("[I]t is equally true that '[t]he Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits and many home activities are not easily transferable to what may be the more grueling environment of the workplace . . . .'" (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))). With this in mind, the ALJ pointed out that Petitioner "is able to attend to all areas of personal care and hygiene, prepare meals daily, play computer games, do dishes, and use a vacuum cleaner." (AR 18). Even though some of these activities may be followed by Petitioner having to sit down and rest (AR 250), Petitioner's own doctor, Mark B. Rencher, M.D., indicated that Petitioner could (1) sit for two hours at a time, (2) stand/walk for two hours at a time, (3) sit for a total of six hours in an eight-hour workday, and (4) stand/walk for a total of six hours in an eight-hour workday. (AR 283). These abilities (and corresponding limitations) are consistent with work performed on a sedentary level and indicate that Petitioner is either not as disabled as he claims or, simply, not motivated or interested in working, thus affecting the persuasiveness of his efforts to obtain disability benefits.[3] The ALJ appropriately incorporated these findings when he questioned Petitioner's credibility.

---

[3] Petitioner's December 1, 2006 Residual Functional Capacity Assessment (although speaking to Petitioner's clavicle fracture) is not at odds with these findings, noting that Petitioner has no exertional limitations, no postural limitations, no manipulative limitations, no visual limitations, no communicative limitations, and no environmental limitations, (AR 222-228). Further, the Residual Functional Capacity Assessment goes on to state:

> [Claimant's] current limitations are presently non-severe and they are reasonably expected to get even better as his fractured clavicle heals. [Claimant's] allegations are not consistent w[ith] medical evidence, his own ADL responses, and his 3rd party's comments as well. [Claimant] is not considered totally credible.

(AR 227).

**MEMORANDUM DECISION AND ORDER - 12**

Together, these reasons offer clear and convincing explanations as to why the ALJ did not find Petitioner's testimony entirely credible. This is not to say, however, that this Court conclusively finds Petitioner not to be disabled under the applicable rules and regulations or that Petitioner does not suffer from chronic pain; indeed, as expected, Petitioner identifies conflicting evidence in support of his position. While such conflicting evidence may not have been given the weight Petitioner would have preferred, it is clear that the ALJ's decision to doubt Petitioner's credibility in denying disability benefits is not without clear and convincing reasons for doing so. As required by controlling law, the ALJ will not be second-guessed here. *See Batson v. Comm'r of Social Security Admin.*, 359 F.3d 1190 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." (internal citations omitted)). Therefore, the Court will not substitute its judgment when the evidence in the record can support the ALJ's findings.

2. Dr. Rencher's Opinions

Dr. Rencher treated Petitioner before the alleged onset date - from April 1999 (AR 285) to approximately April 2005 (AR 250 & 283).[4] Based upon the record, after the alleged onset date, Dr. Rencher offered two sets of opinions - one on March 7, 2007 (AR 250), the other on August 22, 2007 (AR 283-285).[5] The ALJ did not give controlling weight to Dr. Rencher's

---

[4] This period is somewhat in question as the treatment notes in the record suggest, at the very least, that Dr. Rencher and/or the Rencher Family Practice last treated Petitioner on September 8, 2005 - two days before the alleged onset date. (AR 215). Interestingly, even at that time, Dr. Rencher noted that Petitioner was "too stressed so [he] quit his job at phone support" but that Petitioner was also "*trying to get back in construction*." *See id.* (emphasis added).

[5] The ALJ (and Respondent) mistakenly refer to this latter opinion as Dr. Rencher's "first" opinion, dated February 2007. Correspondence from Petitioner's counsel confirms that

**MEMORANDUM DECISION AND ORDER - 13**

assessment to the extent it was inconsistent with competing medical opinions and the balance of the record. (AR 19-20). Petitioner claims that the ALJ's decision to disregard Dr. Rencher's opinions is misplaced given the absence of specific and legitimate reasons for doing so. Pet.'s Brief in Supp. of Pet. for Review, pp. 11-14 (Docket No. 15).

The Ninth Circuit has held that a treating physician's medical opinion is entitled to special consideration and weight. *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989). The treating physician's opinion is given that deference because "he is employed to cure and has a greater opportunity to know and observe the individual." *Id*. Where the treating physician's opinions are not contradicted by another doctor, it may be rejected only for clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Even if the treating physician's opinions are contradicted by another doctor, they can only be rejected if the ALJ provides specific and legitimate reasons, supported by substantial evidence in the record, for doing so. *Id*.

Here, Dr. Rencher's opinions are problematic for at least two reasons.

First, as the ALJ and Respondent note, Dr. Rencher admits that, until March 7, 2007, he had not seen or treated Petitioner for nearly two years. (AR 250). In other words, since his alleged September 10, 2005 onset date, Petitioner never visited Dr. Rencher (even though he was allegedly disabled) until March 7, 2007 when he "request[ed] assistance" in "trying to determine how to get disability so he can live." *See id*. Therefore, not only had Dr. Rencher not treated Petitioner for almost two years, he had no objective evidence in the record (during Petitioner's claimed disability period) from which he could substantiate Petitioner's alleged disability. A lack of objective medical findings, treatment notes, and rationale to support a physician's

---

this "second" opinion is dated August 22, 2007. (AR 282).

**MEMORANDUM DECISION AND ORDER - 14**

opinion may offer a sufficient reason for rejecting that physician's opinion. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). In this respect, then, the undersigned agrees with the ALJ's rationale. (AR 20) ("The ALJ does not find Dr. Rencher's opinions to be compelling for several reasons. First, at the time he offered his opinions, Dr. Rencher had not treated Mr. Bailey for nearly two years. Second, he did not refer to any objective findings or any other evidence in support of his restrictive opinions.").[6]

Second, and more fundamentally, Dr. Rencher appears to contradict himself when discussing Petitioner's physical abilities. For example, on March 7, 2007, Dr. Rencher states that Petitioner "would not be able to sit at a computer or at a desk for more than one to two hours, he cannot stand for more than five minutes, [and] cannot walk for more than 20 minutes" before concluding that Petitioner is "essentially unemployable and completely disabled." (AR 250).[7] In contrast, less than six months later, Dr. Rencher outlined less-restrictive limitations, indicating that Petitioner could sit for 2 hours at a time (for a total of six hours in an eight-hour

---

[6] Petitioner questions why "Dr. Rencher, who has seen [Petitioner] since 1999, looked at multiple MRI tests, and worked with [Petitioner] through his addiction to narcotic medication, would not be able to give an opinion as to [Petitioner's] ability to work." *See* Pet.'s Brief in Supp. of Pet. for Review, p. 12 (Docket No. 15). Petitioner's reasoning is flawed, however, when recognizing that Dr. Rencher performed the above-referenced treatment/testing during a time when Petitioner was working and, hence, *not disabled*. Without new medical evidence, secured after Petitioner's alleged onset date, it cannot be said that Dr. Rencher is capable of opining on whether Petitioner is currently disabled under the rules.

[7] Regardless of the weight lent to Dr. Rencher's March 7, 2007 treatment notes, the ALJ is not bound by his formal disability determination. *See* 20 C.F.R. § 416.927(e)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").

**MEMORANDUM DECISION AND ORDER - 15**

workday) and could stand/walk for 2 hours at a time (for a total of six hours in an eight-hour workday). (AR 283). In the Court's mind, these inconsistencies reflect a medical provider's understandable lack of familiarity with a patient he has not seen in almost two years. At the very least, for the purposes of a disability determination, Dr. Rencher's opinions are inconclusive (if not altogether unreliable) when recognizing that any corresponding "findings" are based on stale medical evidence (during a time when Petitioner was not disabled) and/or based upon Petitioner's own, subjective complaints, independent of medically acceptable clinical and laboratory diagnostic tests. (AR 20) ("Furthermore, it does not appear that Dr. Rencher performed any of his own testing; therefore, it is likely that his opinions are based on [Petitioner's] subjective complaints.").

Simply put, although Petitioner suffers from an impairment that no doubt impacts his ability to work, it cannot be said, as Petitioner's counsel does, that "the ALJ has failed to provide substantial evidence to reject the opinions of Mr. Bailey's treating physician, Dr. Mark Rencher, M.D." *See* Pet.'s Brief in Supp. of Pet. for Review, p. 11 (Docket No. 15). While Dr. Rencher's opinions may not have been given the weight Petitioner would have preferred, they were not given independent of the surrounding medical record.

At this stage of the proceedings, it is not this Court's duty to resolve the conflicting opinions and ultimately decide whether Petitioner is once-and-for-all disabled as that term is used within the Social Security regulations. Rather, this Court is tasked with determining whether the ALJ's decision in finding that Petitioner is not disabled is supported by the record. With this in mind, the ALJ has offered clear and convincing and/or specific and legitimate reasons, supported by substantial evidence in the record, for rejecting Dr. Rencher's opinions.

*See supra* at pp. 13-16.  Because the evidence can reasonably support the ALJ's conclusion in these respects, this Court will not substitute its judgment for that of the ALJ's.  *See Richardson*, 402 U.S. at 401; *Matney*, 981 F.2d at 1019.

        3.        <u>Carolyn Bailey's Testimony</u>

Carolyn Bailey, Petitioner's mother, submitted a written statement concerning Petitioner's condition.  *See* Function Report Adult - Third Party, pp. 1-9 (Docket No. 15, Att. 1).  The ALJ, however, lent little weight to Ms. Bailey's opinions in that they did not establish that Petitioner was disabled within the rubric of the Social Security laws.  (AR 19).  Specifically, while the ALJ noted that Ms. Bailey is in a position to make reliable observations of Petitioner's behavior, (1) she is not a medical expert, (2) she was never in a treating/professional relationship with her son, and (3) her opinions are not supported by contemporaneous medical findings in the record.  *See id*.  This approach is consistent with *Bayliss v. Barnhart*, where the Ninth Circuit reasoned:

> An ALJ need only give germane reasons for discrediting the testimony of lay witnesses.  Inconsistency with medical evidence is one such reason.  The ALJ accepted the testimony of Bayliss's family and friends that was consistent with the record of Bayliss's activities and the objective evidence in the record; he rejected portions of their testimony that did not meet this standard.  The ALJ's rejection of certain testimony is supported by substantial evidence and was not error.

*Bayliss*, 427 F.3d 1211, 1218 (9th Cir. 2005).

Here, Ms. Bailey's close relationship with Petitioner and her desire to help him cannot be questioned.  However, Ms. Bailey's perspective is somewhat at odds with evidence in the record when considering the absence of treatment notes confirming Petitioner's disability since September 10, 2005.  *See supra* at pp. 9-11.  This lack of medical treatment for an extensive

**MEMORANDUM DECISION AND ORDER - 17**

amount of time provides the ALJ with reasons for doubting Ms. Bailey's opinions that are germane to her.

Additionally, the opinions credited to Ms. Bailey that Petitioner cites in his briefing are of little consequence when determining the extent of Petitioner's disability, if any. There, Petitioner states:

> In her statement, Ms. Bailey indicates th[at] [Petitioner] lives in her home. His daily activities include watching TV, reading, and talking. While she does indicate he cares for his personal needs and prepares simple meals, she notes he does no household chores or yard work. She notes he does not do the shopping and goes out rarely. She also notes he has few social activities and that he actually gets depressed around other people.

*See* Pet.'s Brief in Supp. of Pet. for Review, p. 15 (Docket No. 15). Thus, even if the ALJ improperly rejected Ms. Bailey's opinions, these statements succeed only in establishing that Petitioner:

- lives at home;
- watches television;
- reads;
- engages in conversation;
- cares for his personal needs;
- prepares simple meals;
- does not do household chores;
- does not do yard work;
- does not do the shopping;
- goes out rarely;

**MEMORANDUM DECISION AND ORDER - 18**

- has few social activities; and
- gets depressed around other people.

*See id*. Even if true, then, these opinions are incapable of reflecting Petitioner's inability to perform sedentary work as the ALJ concluded.

Therefore, there is no basis to claim that the ALJ improperly disregarded Ms. Bailey's testimony. While ultimately not favorable to Petitioner, the ALJ's rejection of Ms. Bailey's testimony was not made independent of the record. Under these circumstances, because the evidence can reasonably support the ALJ's conclusion, this Court will not interfere with the ALJ's findings. *See Richardson*, 402 U.S. at 401; *Matney*, 981 F.2d at 1019.

## IV. CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, the Court may not substitute its own interpretation for that of the ALJ. *Key*, 754 F.2d at 1549.

I am of the opinion that the evidence upon which the ALJ relied can reasonably and rationally support his well-formed conclusions, despite the fact that such evidence may be susceptible to a different interpretation. A different finder-of-fact may have reached a different conclusion; still, that is not the function of a federal judge reviewing a Social Security determination.

Accordingly, the ALJ's decisions were based on proper legal standards and supported by substantial evidence. Therefore, I conclude that the Commissioner's determination that

**MEMORANDUM DECISION AND ORDER - 19**

Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

Accordingly, the Commissioner's decision is affirmed.

## V.  ORDER

Based on the foregoing, the decision of the Commissioner is AFFIRMED and this action is DISMISSED in its entirety, with prejudice.

DATED:  **September 27, 2010**

Honorable Ronald E. Bush
U. S. Magistrate Judge